MORIAL, Judge.
This is another chapter in the long history of this litigation which began when plaintiff filed suit for separation from bed and board in 1958. After prolonged litigation through the several courts of our state plaintiff obtained a judgment from the Louisiana Supreme Court on December 11, 1967 remanding the case to the district court for the defendant to give an accounting of the bonuses he received from May 9, 1958 until October 18, 1961. McMichael v. McMichael, 251 La. 654, 205 So.2d 433 (1967). It is the findings and judgment of the district court of June 29, 1973 made pursuant to the judgment of the Supreme Court which are the subject of this appeal.
Plaintiff contends the trial court erred in: (1) setting the total amount of bonus salaries during the period for which the defendant was ordered to give an accounting ; (2) not disallowing certain credits against bonus salaries or considering them in the nature of gratuitous payments for purchases of the wife absent her authorization to pay; or, if the credits were legitimate deductions, they were previously accounted for and a credit given Mr. Mc-Michael against his regular salary funds in the prior settlement of the community; (3) not finding her entitled to legal interest on any amounts due; and (4) giving great weight to the testimony of defendant. Defendant contends that the judgment of the trial court is without error. We affirm.
Plaintiff argues that the bonuses were not $33,607.56 as found by the district court but $51,257.10. She arrives at the larger sum via a stipulation of counsel dated September 8, 1958, based upon the inventory of the community on August 26, 1958 which showed bonuses earned in the amount of $15,456.93 as of June 30, 1958 “but not yet paid.” That stipulation states had Mr. Brandon B.^Woolley, CPA for the George Engine Company, Inc., appeared in court he would have testified that $15,466.-63 in bonus salaries “computed as June 30, 1958” were due “with basis determined as of September 5, 1958, and payable sometime within 90 days from that date.” Plaintiff then adds this $15,466.63 figure to bonuses accrued for 1959, 1960 and 1961 as shown on an unsworn statement of defendant’s wages on a worksheet of Mr. Lewis J. Bartel, comptroller of defendant’s employer, George Engine Company, Inc. This statement shows the yearly total of accrued bonuses as follows: 1958 — $11,060.-02; 1959-$18,608.95; 1960-$12,469.89; and 1961 — $4,711.33.
However, Bartel testified from corporate records of defendant’s earnings prepared by his predecessor. He stated with sped- *161 ficity the exact amount of the bonus received by defendant each month as follows:
May 1958 $ 798.46
August 1958 . 103.72
September 1958 2965.85
September 1958 452.21
December 1958 289.39
January 1959 792.80
February 1959 1043.16
March 1959 1427.99
April 1959 1027.28
May 1959 1726.97
June 1959 825.78
July 1959 1307.77
August 1959 270.14
September 1959 586.79
October 1959 860.46
December 1959 362.97
January 1960 1722.77
March 1960 467.10
March 1960 634.63
April 1960 267.02
May 1960 506.21
June 1960 938.45
July 1960 578.40
September 1960 2313.63
September 1960 302.16
October 1960 567.28
December 1960 1172.24
These bonus payments total $29,688.45.[1]
The entries of the monthly bonuses earned in 1961 were illegible; however, Bartel stated he considered defendant’s regular salary of $1,000.00 per month and from the earnings records calculated that defendant received bonus payments in the ■year 1961 in the amount of $4,711.33.
Bartel explained how the figure $15,466.-93 could have been placed in the inventory and used in the stipulation but not in fact received by the defendant. He stated:
“You see, accrued bonuses can be lost in our organization, because of deficit and profit. You could have a lull during this particular bonus program, you could have had $20,000.00 bonus accrued of any one month and due to a reduction of profit in succeeding months, you might wind up with $10,000.00 when the final analysis comes out.”
He further testified that the exact amount of bonus payments be paid to the defendant were not determined until approximately September 1, 1958, two months subsequent to the inventory and the June 30, 1958 date the stipulation states the bonuses were “computed.” Bartel stated that during this period bonuses earned could change and the amount of bonus actually received by the defendant reduced depending upon corporate earnings for the bonus period.
The testimony of Bartel coupled with an “Analysis of B. E. McMichael Bonus Account taken from the General Ledger Account in the Records of George Engine Co., Inc.” from the “Year Ended June 30, 1956” thru the “Ten Months to April 30, 1959” filed in the record on December 29, 1964 and marked P-7 and P-8, which supports Bartel’s explanation of the employer’s method of computing bonuses actually paid, are decisive and dispositive of plaintiff’s erroneous contention that $15,456.93 is to be included in the total bonuses received by the defendant.
To arrive at a figure for bonus payments for the period January 1, 1961 to October 18, 1961 the district court allowed Vi2 of $4,711.33 for each month. For the month of October, the district court debited defendant’s bonus payments with JÍ2 of the total bonuses for 1961. Therefore, adding $3,926.11 to $29,688.45 totals $33,614.5.6 the sum, we conclude the defendant received during the period for which he was ordered to give an accounting.
Having concluded that defendant received total bonuses of $33,614.56, we now address ourselves to plaintiff’s second contention. We find no manifest error in the deductions allowed by the district court.
Defendant has made the accounting required of him. There is no evidence that *162 he squandered any of the bonuses to the prejudice of the plaintiff. To the contrary, he has proved he expended the bonuses for necessities, repairs of the community which he was administering, hospital, drug, and medical bills. The record amply supports, and the district court properly allowed as deductions chargeable against the bonuses, the following:
House notes' — 1308-10 Clay St. $5,400*
Houses notes — 516 Hester St. 6,300
Metairie Hospital 3,000
Hotel Dieu Hospital 264
Mr. Prisen (hospital bill reimbursement) 350
Medical Bills 1,800
Doctor Bills 2,500
Ford Reese, Attorney Fee 1,260
Mr. Occhipinti, Attorney Fee 500
Louis Phillips, Attorney Fee 500
Daniel Wood and Pat Arand, CPA’s 800
Apartment Rent (5 mos. at $70 per mo.) 350
Automobile 3,500
Church Bond 1,000
Down Payment of 516 Hester St. 6,200
Furniture for 516 Hester St. 3,400
Cash to Mrs. McMichael in 1960 1,200
Window Repairs to 1308 Clay St. 530
NSF Checks of Mrs. McMichael 1,000
Cash to Mrs. McMichael 200
Gary Bannister,' Investigator 600
Borrowed Money from Plant Help 66
Air Conditioner for House 987
Repair to 516 Hester St. 1,360
Income Tax & Interest for Mrs. McMichael 930.55
Transportation to Virginia for Mrs. McMichael 325
Jung Hotel Bill for Mrs. McMichael 94
TOTAL CREDITS $44,416.55
OUR TOTAL $44,056.55
Defendant, as head and master of the community was not foreclosed from paying debts incurred by the plaintiff for herself or the community during the existence of the community. The payment of such debts required no prior authorization of the plaintiff-wife. Even if gratuitous, the defendant is permitted to make such a disposition to the wife via payment of her debts. LSA-R.C.C. Art. 2404. Plaintiff was the beneficiary of any such payment and should not be heard to complain when payment, as here, is proved.
We have adversely disposed of plaintiff’s contentions numbered one and two, accordingly, contention number three warrants no discussion. Plaintiff’s contention number four is not supported by the record and is, therefore, without merit.
For the reasons assigned, the judgment is affirmed.
Affirmed.

. The district court’s total was $29,681.45 which is $7.00 less than the total we reach from adding the monthly bonuses paid by de-fendant.

 Should be $5,040.